## In re CRAMER.

### (District Court, D. Massachusetts. June 22, 1909.)

### No. 14,263.

1. BANKRUPTCY (§ 136*)—CONCEALMENT OF PROPERTY BY BANKRUPT—EVIDENCE TO ESTABLISH.

A fair preponderance of evidence is sufficient to sustain a finding that a bankrupt has concealed property from his trustee, and an order requiring him to turn the same over.

[Ed. Note.—For other cases, see Bankruptcy. Dec. Dig. § 136.*]

2. BANKRUPTCY (§ 136*) — CONCEALMENT OF PROPERTY BY BANKRUPT — SUFFICIENCY OF PROOF.

The purchase by a bankrupt of a large quantity of goods in his business on credit, within a few months prior to his bankruptcy and when admittedly insolvent, his sale of the same, and failure to pay any part of the purchase price or to reasonably account for the proceeds, coupled with testimony as to admissions made by him that certain of the goods were shipped to friends, who were withholding payment until the termination of the bankruptcy proceedings, are facts sufficient to justify a finding of fraudulent concealment of property, and an order requiring it to be turned over to the trustee.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 136.*]

In Bankruptcy. In the matter of Peter Cramer, bankrupt. On petition for review of order of referee denying petition by the trustee that the bankrupt be required to turn over certain property. Order vacated.

Lee M. Friedman, for trustee.
Charles M. Thayer, for bankrupt.

DODGE, District Judge. A consideration of the facts set forth by the referee in his report and of the evidence which accompanies the report has led me to believe that the referee must have acted, in refusing the order asked for, upon the theory that proof beyond a reasonable doubt was necessary to sustain a finding that there had been any concealment of property from the trustee. But that a fair preponderance of evidence in favor of such a conclusion is enough seems to me sufficiently well settled. at least in this circuit. Re Cole, 144 Fed. 392, 75 C. C. A. 330. That there was such a preponderance of evidence in this case I find myself unable to doubt.

The bankrupt may have been, as the referee thinks, a person of an extremely low order of intelligence; but there is no question that he had intelligence enough to carry on business as a wholesale and retail dealer in picture frames for five years in Worcester, not to mention a previous business experience in two other places, nor is there any doubt that he had intelligence enough to buy about $5,000 worth of merchandise on credit in Chicago and other places, in July, 1908, knowing himself to be insolvent at the time, as he has admitted, and to file this voluntary petition in bankruptcy on the 16th of November following, wherein he has scheduled assets to the amount of $716.32 against

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

liabilities to the amount of $6,791.97. None of the goods bought in July, as above, have been paid for. Between October 1st and November 3d the bankrupt made 33 different shipments of goods to persons in various places in New Hampshire, Massachusetts, and New York, and he has professed, during his examination in these proceedings in the December following, to be unable to remember to whom all these goods were sold, if sold as he claims, or to give any reasonable explanation as to what he has done with the money received for them. The trustee in bankruptcy, a member of the bar of this court, himself able to speak and understand the Yiddish language, which is that in which the bankrupt habitually talks, has testified that, while the bankrupt's examination was progressing, the bankrupt called upon him at his office in Boston, begged him to discontinue the examination, promised to "make things good" with the creditor whom he represented as counsel, and with him, if this could be done, and went on to state during the same conversation that about $1,500 worth of the goods referred to had been shipped to different personal friends, who had paid $700 or $800 on account, and were holding the remaining $700 or $800 for the bankrupt's benefit until the bankruptcy proceedings should be concluded. The bankrupt, according to the trustee's testimony, went on to give the names of the consignees and the amount of goods shipped to each, and stated that he had given these consignees receipted bills purporting to show, contrary to the facts, that they had paid in full for the goods and owed nothing on account of them; but, upon the trustee's refusal to accept a settlement in full for the creditor he represented to the exclusion of all other creditors, the bankrupt withdrew all the above statements, denied having made them, and declared that "as a matter of fact these people have paid me for the goods which I sent them, I have given them receipted bills, and they owe me nothing, and I have no property with them or elsewhere." A further statement, made by him during the conversation and testified to by the trustee, was that a former employé had threatened to make disclosures about these goods unless the bankrupt would pay him to hold his tongue.

The referee reports that he has no doubt that the bankrupt hoped, and was perfectly willing, to make arrangements with the trustee and with the creditor referred to in order to suppress the further prosecution of his examination. The referee reports that he has not the slightest doubt of the substantial accuracy of the trustee's testimony. If this is true, I am unable to see why the trustee's claim that the bankrupt is concealing money or property in these proceedings is not supported by a sufficiently clear preponderance of evidence. The purchases of goods on credit and their subsequent disappearance, or the disappearance of money received from them, if sold, within so short a time before the bankruptcy and while the bankrupt knew he was insolvent, together with the entire failure of the bankrupt to meet by reasonable and honest explanation the presumption against him which these facts create, would to my mind go very far, without more, to prove him guilty of concealment. If, under the pressure of an inquiry into these doings of his, he has also made admissions of the kind testified to by

the trustee, I am unable to believe that justice will be done if the case be treated as one wherein the power of the court to compel restitution of what is being dishonestly withheld from creditors cannot be exercised for want of sufficient evidence.

The order denying the trustee's petition is disapproved, and is to be vacated. On the case as now presented, the referee, in my judgment, should make such an order as has been requested by the trustee.