### In re HOYNE.*
### WINSTON v. HOYNE et al.

(Circuit Court of Appeals, Seventh Circuit. January 3, 1922.)

Nos. 2903, 2917.

1. **Bankruptcy �köö440—Order dismissing petition to vacate adjudication not reviewable by appeal.**

   An order dismissing a petition to vacate an adjudication in bankruptcy was not appealable, but reviewable only by petition to review and revise.

2. **Bankruptcy �köö446—Only questions of law considered on petition to revise.**

   On petition to review and revise an order dismissing a petition to vacate an adjudication in bankruptcy, only questions of law may be considered.

3. **Bankruptcy �köö446—Whether master's report, wholly unsupported by evidence, is reviewable as question of law.**

   The question whether the report of a master was wholly unsupported by testimony is one of law, reviewable on petition to review and revise.

4. **Bankruptcy �köö446—Facts and inferences favorable to respondents accepted on petition to revise.**

   On petition to review and revise an order in a bankruptcy proceeding, all the facts and inferences favorable to the respondents must be unqualifiedly accepted.

5. **Partnership �köö55—Finding of no partnership held supported by recitals of relation of debtor and creditor.**

   A finding that, under an agreement between creditors of a partnership and persons forming a new partnership to take over its business and conduct it under the supervision of a managing committee therein desig-

---

*Certiorari denied 256 U. S. —, 42 Sup. Ct. 317, 66 L. Ed. —.

nated, no partnership relation existed between the creditors and the other parties was supported by the recitals of the contract, describing the relationship as that of debtor and creditor.

**6. Partnership ⊜55—Finding held warranted that creditors, who under agreement were to be paid net profits, did not become partners.**

Where persons forming a partnership to take over the business of a former partnership, which was badly involved in debt, agreed with creditors of the old partnership that the business would be conducted under the supervision of a managing committee therein designated, and that the net earnings should be applied on the claims of such creditors, finding *held* warranted that the creditors did not thereby become members of the partnership, as respected the rights of other creditors, in view of Partnership Law Ill. (Hurd's Rev. St. 1919, c. 106a), §§ 6, 7, 16, and 47.

**7. Partnership ⊜2—Law of place where contract executed and business conducted governs.**

Whether a contract between creditors of a partnership and persons forming a new partnership to take over the old firm's business created a partnership between the creditors and the other parties was controlled by the Partnership Law of Illinois, where execution of the contract was completed in Chicago and the business of the new firm was to be there conducted.

**8. Partnership ⊜5—Participation in profits evidence of partnership but not conclusive.**

Under Partnership Law Ill. § 7, subd. 4, participation in profits as such tends to establish the existence of a partnership, but is not conclusive.

**9. Partnership ⊜17—Intent to loan money and receive profits in payment may overcome effect of receipt of profits.**

While the intent of the parties to a contract under which the net earnings of a partnership are to be applied on the debts of a former partnership, whose business was taken over, must be gathered from their acts, and not from an unlawful desire to avoid liability, an intent to loan money, to be repaid as fast as the profits permit, may overcome the effect of the receipt by the creditors of the profits of the business.

Petition to Review and Revise Proceedings of, and Appeal from, the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Proceeding by Charles S. Winston to vacate an adjudication in bankruptcy against Eugene M. Hoyne and others. The petition was dismissed, and the petitioner appeals and files a petition to review and revise. Appeal dismissed, and order affirmed.

Carroll J. Lord, of Chicago, Ill., for petitioner, appellant.

John O'Connor, J. J. Healy, E. R. Johnston, T. M. Hoyne, and Henry Jackson Darby, all of Chicago, Ill., for respondents, appellees.

Before BAKER, EVANS, and PAGE, Circuit Judges.

EVANS, Circuit Judge. Upon voluntary petition Eugene M. Hoyne and Eugene H. de Bronkhart, as the sole members of the firm of Eugene M. Hoyne & Co., a partnership, together with the partnership, were on April 8, 1920, adjudged bankrupts. On May 7th a petition was filed by Charles S. Winston, praying that the order of adjudication be vacated. This petition, as amended, put in issue the personnel of the copartnership of Eugene M. Hoyne & Co., petitioner alleging that, in addition to the aforementioned partners, there were William R. Moorhouse, Royal C. Vilas, Peter G. Thompson, Frank G. Hoyne, Thomas M. Hoyne, Maclay Hoyne, J. C. McCord, William Franz

Anderson, Ward A. Vilas, T. H. Willis, Henry D. Sturtevant, Daniel J. Schuyler, R. T. Davis, and John D. Cory. Insolvency was denied, with these parties recognized as partners.

Issue was joined and the matter referred to a master to take proofs and report his conclusions and recommendations to the court. Testimony was thereafter taken before the special master, upon which he filed his report, finding that the firm of Eugene M. Hoyne & Co. consisted of Eugene M. Hoyne and Eugene H. de Bronkhart, and recommending that the Winston petition be dismissed, with costs. The master approached the question stating:

"I therefore determine that the hearing should be had on the sole question as to whether there was a partnership relation as claimed."

He further said:

"It would seem that the business was unsuccessful, because none of these obligations were met out of any of the profits; that no profits were made, excepting for a short time, and not very large; and that none of the creditors who signed this agreement were paid anything on their respective claims, either on their original indebtedness or for money they advanced. The bankrupt firm owes unsecured creditors approximately $750,000; secured creditors, $2,600,000. The liabilities of Perry, Price & Co., which are involved in the contract, amount to about $720,000, and the loan by a few of the owners of those claims was about $12,000. The contract under which the firm of Hoyne & Co. took over the old business of Perry, Price & Co. is the basis of the claim that the partnership relation was created thereby and that the new creditors who were created by Hoyne & Co. in running the business are now creditors of all the parties to that contract. Attention is called to the fact that the petitioners allege that they did not know the facts on which they base the partnership till after bankruptcy, so they did not extend their credit based on any thought that anybody except de Bronkhart and Hoyne were liable."

He further said, discussing the issue:

"Are these bankrupts partners as between themselves? The contract in question expressly states that those who are now sought to be charged as partners were merely creditors who postponed their day of payment until profits were earned in carrying on the business."

And in conclusion:

"As first stated, I think the Illinois statute precludes the partnership idea; but aside from that I am of the opinion that the contract does not involve the partnership construction."

This report was approved by the court.

[1-3] Petitioner seeks to review this order dismissing his petition both by appeal and by a petition to review and revise. That the order under consideration is not appealable seems well settled. Brady v. Bernard & Kittinger, 170 Fed. 576, 95 C. C. A. 656; Hart-Parr Co. v. Barkley, 231 Fed. 913, 146 C. C. A. 109; In re Ives, 113 Fed. 911, 1 C. C. A. 541, B-R Electric & T. Mfg. Co. v. Ætna Life Ins. Co., 206 Fed. 885, 124 C. C. A. 545; In re Vanoscope Co., 233 Fed. 53, 147 C. C. A. 123; Plymouth Cordage Co. v. Smith, 194 U. S. 311, 24 Sup. Ct. 725, 48 L. Ed. 992; Brady v. Bernard & Kittinger, 217 U. S. 595, 30 Sup. Ct. 695, 54 L. Ed. 896; Armstrong v. Norris, 247 Fed. 253, 159 C. C. A. 347. Petitioner does not urge it in this court. His only way to review the order is by petition to review and revise, and therefore naught but questions of law may be considered. In re Caponigri,

183 Fed. 307, 105 C. C. A. 519; In re Antigo Screen Door Co., 123 Fed. 249, 59 C. C. A. 248; In re Richards, 96 Fed. 935, 37 C. C. A. 634; Courier-Journal, etc., Co. v. Schæfer-Meyer Brewing Co., 101 Fed. 699, 702, 41 C. C. A. 614; In re Rosser, 101 Fed. 562, 41 C. C. A. 497; Stuart v. Reynolds, 204 Fed. 709, 123 C. C. A. 13. Our examination of the record convinces us that but one question of law is involved, viz. Is the report of the master wholly unsupported by testimony? Such a question is one of law. In re Kuhn, 234 Fed. 277, 148 C. C. A. 179; Good v. Kane, 211 Fed. 956, 128 C. C. A. 454; In re Knosher & Co., 197 Fed. 136, 116 C. C. A. 560; In re Cole, 144 Fed. 392, 75 C. C. A. 330.

[4-6] Counsel for petitioner place much reliance upon the written agreement of the parties, but it is by no means all of the material evidence bearing upon this issue. Several witnesses, some of them parties to the written agreement, testified to facts which throw some light upon the construction which the court must give to the contract. Certainly all the facts and inferences favorable to the respondents must be unqualifiedly accepted under the aforementioned rule of law. The contract, material parts of which are set forth below,[1] instead

---

[1] This agreement, made at Chicago, Illinois, this ———— day of October, 1918, between Eugene H. de Bronkhart and Eugene M. Hoyne, parties of the first part, and William R. Moorhouse, Royal C. Vilas, Frank G. Hoyne, Thomas M. Hoyne, Maclay Hoyne, J. C. McCord, W. Franz Anderson, Ward A. Vilas, and T. H. Willis, parties of the second part, witnesseth:

Whereas, on and prior to October 24, 1918, Oliver H. Perry, Jr., George V. Price, and Eugene H. de Bronkhart (one of the parties of the first part above named) were copartners and engaged in the brokerage business at No. 105 South LaSalle street, Chicago, Illinois, under the firm name of Perry Price & Co.; and

Whereas, said Oliver H. Perry, Jr., and George V. Price, on and prior to October 24, 1918, had expressed their desire to retire from said firm and to terminate said partnership; and

Whereas, on said October 24, 1918, said parties of the first part entered into a partnership agreement for the purpose of succeeding to, taking over, and continuing the business of said Perry, Price & Co., under the firm name of Eugene M. Hoyne & Co.; and

Whereas, on said October 24, 1918, said Oliver H. Perry, Jr., and George V. Price retired from said firm of Perry, Price & Co., and all of the assets, business, and good will were duly transferred to and taken over by said parties of the first part, copartners, and all of the liabilities of said Perry, Price & Co. were assumed by said parties of the first part, copartners as aforesaid; and

Whereas, said Perry, Price & Co. were, and said parties of the first part, as successors to said Perry, Price & Co., as aforesaid, are, indebted to the parties of the second part in the amounts approximately set opposite their respective names, as shown on the books of account of said Perry, Price & Co., at the close of business on October 15, 1918; and

Whereas, said Perry, Price & Co. were financially embarrassed, and unable to pay and discharge said indebtedness owing to said parties of the second part, or any of the same; and

Whereas, said parties of the first part, successors to said Perry, Price & Co., are financially unable at this time to pay and discharge said indebtedness owing to said parties of the second part, or any part thereof; and

Whereas, the parties of the first and second parts hereto mutually desire that the business of said Perry, Price & Co. be continued by the parties of the first part, copartners as aforesaid, to the end that the parties of the first part may be given an opportunity to pay and discharge said indebtedness out of the net earnings to be realized from the continuation of the business for-

of recognizing the partnership status, describes the relationship of the parties as debtors and creditors. We might therefore from this fact alone, find support for the master's finding. True, the written agreement may not have embodied the true understanding of the

merly conducted by said Perry, Price & Co. and taken over by said parties of the first part as aforesaid:

Now, therefore, the parties of the first and second parts hereto * * * do covenant and agree as follows:

1. The parties of the first part are to continue the business heretofore conducted by the firm of Perry, Price & Co., taken over by them as hereinabove set forth, under the firm name of Eugene M. Hoyne & Co., and agree to devote all of their time and attention to the performance of the covenants herein contained.

2. Messrs. William R. Moorhouse, Royal C. Vilas, and Henry D. Sturtevant are hereby designated and constituted a managing committee of the business of the parties of the first part until the indebtedness owing to said parties of the second part, hereinbefore referred to and set forth, shall have been fully paid, without salary or compensation, however, with full power to supervise and control the said business of the parties of the first part as hereinafter set forth, and with power to designate one of the members of said firm as the manager thereof, and to from time to time appoint, employ, and discharge for and in behalf of the parties of the first part, copartners as aforesaid, any other person as manager of said business, and also to employ and discharge, for and in behalf of said parties of the first part, copartners as aforesaid, such other person or persons as they may elect, until all of said indebtedness owing to the parties of the second part hereinbefore mentioned and set forth shall have been fully paid, at such salaries as said managing committee shall fix and determine, which salaries shall be paid by the parties of the first part as a part of the current expense of their said business; it being understood, however, that the employment of such manager or other person shall cease and determine when and as soon as said indebtedness shall have been fully paid, unless such employment shall be continued beyond said time by said parties of the first part.

3. The parties of the first part shall have the right to carry on, conduct, and manage said business, subject, however, to the supervision and control of said managing committee. The manager appointed or employed as aforesaid shall have the power and authority given or delegated to him by the managing committee, and shall at all times be under the direction of said managing committee, it being understood that in the event of any disagreement between said parties of the first part and said manager or said managing committee concerning the conduct and prosecution of said business, then the determination of said managing committee shall obtain and be final.

6. The first net earnings of the business of the parties of the first part accruing after the date of this agreement shall semiannually, on the 1st days of April and October of each year, be appropriated and applied pro rata to the payment of the loans hereinabove mentioned, aggregating one hundred and twenty-seven thousand dollars ($127,000), with interest thereon at 6 per cent. per annum, payable on said 1st days of April and October, until said loans shall have been fully paid, and no part of said earnings shall be applied to the payment of the indebtedness owing to the parties of the second part hereinbefore mentioned and set forth until the whole of said loans shall have been paid out of said net earnings or otherwise discharged.

7. After said loan, together with interest thereon, shall have been paid out of said net earnings, then said net earnings shall semiannually thereafter, on the 1st days of April and October of each year, until fully paid, be appropriated and applied pro rata to the payment of said indebtedness owing to the parties of the second part hereinbefore mentioned and set forth, with the exception of the indebtedness due Thomas M. Hoyne and Maclay Hoyne; their said indebtedness to be paid after payment of the indebtedness due the other parties of the second part.

parties; it may have been drawn for the purpose of defeating any liability arising out of the partnership relation, and may not have been expressive of the real intent of the parties; or the agreement may not have expressed the entire understanding of the parties. This may be conceded, but it does not derogate from the effect of the document, the recitals of which recognize the relation of debtor and creditor, and which therefore furnish some basis for the master's conclusion.

Certainly the oral testimony tends to support this view. Respondents were creditors of the old brokerage firm of Perry, Price & Co. This firm became badly involved. The creditors were numerous; the assets small. Like others, respondents desired to increase the amount recoverable on their claims. They agreed upon certain conditions not to press them. A change in the name and membership of the firm was one of the conditions imposed. The payment of the claims as fast as their earnings permitted was another condition. Neither the motive that prompted the parties to enter into the agreement nor the contract itself is indicative of a partnership between the debtors and the creditors. These facts may not and do not constitute all of the evidence, nor were they conclusive on the District Court; but they afford material support and rather persuasive reasons for the conclusion which the master reached.

It is urged, however, that notwithstanding these foregoing reasons in support of the findings, the question of the status of the parties is one for the court to determine solely from the contract and that certain provisions make it impossible for us to conclude other than that a general partnership was created. Because the respondents were to receive the net profits, and because they appointed trustees to represent them to insure the payment of the profits on their claims, and such trustees were given, for the purpose, some voice in the affairs of the partnership, it is urged that the partnership extended to the respondents. But is this conclusion unavoidable?

[7, 8] The Uniform Partnership Law of Illinois (Hurd's Rev. St. 1919, c. 106a, §§ 1-44) governs this contract; Chicago being the place where its execution was completed and the same city being the place where the business of the new firm was to be conducted. The Uniform Partnership Act was in force at the date of its execution, and had been for over a year. Limited partnerships for the conduct of a brokerage business were not permitted. Section 3, Limited Partnership Act (Hurd's Rev. St. 1919, c. 106a, § 47). It is true that participation in profits as such is evidence tending to establish the status of partnership between the respondents, but it is not conclusive. Section 7, subd. 4. More significant would participation in profits be, if the evidence showed that the payments were made to partners as such, rather than in the extinguishment of a debt.

The Uniform Partnership Act defines certain tests by which the status of an individual may be determined. Section 6, subd. 1, defines a partnership as:

"An association of two or more persons to carry on as co-owners a business for profit."

277 F.—43

Section 7, subd. 1, provides:

"Except as provided by section 16, persons who are not partners as to each other are not partners as to third persons."

Section 16, referred to, deals with a situation where an estoppel has arisen by virtue of statements made by one holding himself out as a partner.

[9] Intent is a factor that may be considered in any finding of fact. True, intent must be gathered from the acts of the parties, and not from an unlawful desire to avoid liability; that is to say, the parties may intend to avoid liability, and may fail to do so because their acts and their contract establish a status from which liability as a partner follows. But if the parties intend to loan money, which is to be repaid as fast as the profits permit, we think the intent may overcome the effect of receipt by the creditors of the profits of the debtor concern.

At least it is evident that a basis, and a substantial one, exists for the finding of the master, and we are therefore not permitted to disturb it. We find no error of law.

The appeal is dismissed. On the petition to review and revise the order is affirmed.

